## CHILLICOTHE FURNITURE CO. v. REVELLE.*

(Circuit Court of Appeals, Eighth Circuit. August 9, 1926.)

No. 7056.

**1. Receivers ⬅⮞71—Possession of securities in joint desposit held to vest in receiver.**

Where a note and mortgage, assigned to a corporation, had been deposited by the assignor to comply with a state law requiring such deposit to entitle it to do business therein, and at the time of appointment of a receiver for the assignee corporation were in an iron box having two different keys, one held by the state superintendent of insurance and the other by the corporation, both required to open the box, actual possession of the note and mortgage was in the superintendent of insurance and the corporation, jointly, and on appointment of a receiver for the corporation its possession vested in him.

**2. Courts ⬅⮞504—Commencement of suit to administer property of corporation gives federal court exclusive jurisdiction over such property.**

Commencement of a suit in a federal court to administer the property of a corporation for the benefit of its creditors and stockholders gives that court jurisdiction over all such property to the exclusion of a state court in a later suit, and actual seizure of property before commencement of the second suit is not indispensable to such exclusive jurisdiction.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Davis, Judge.

Suit by Charles G. Revelle, receiver of the Interstate Casualty Company, against the Chillicothe Furniture Company. From an order granting a preliminary injunction, defendant appeals. Affirmed.

Paul D. Kitt and Elton L. Marshall, both of Chillicothe, Mo., and Guy A. Thompson and Frank A. Thompson, both of St. Louis, Mo., for appellant.

Conway Elder, of St. Louis, Mo., for appellee.

Before SANBORN and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

WALTER H. SANBORN, Circuit Judge. This is an appeal from an order of the Unit-

*Rehearing denied October 18, 1926.

ed States District Court temporarily enjoining, at the suit of Charles G. Revelle, the receiver of the property of the Interstate Casualty Company, appointed by that court, the Chillicothe Furniture Company, a corporation, from farther proceeding in a suit in equity it had brought in the circuit court of Livingston county, Mo., to avoid and annul its promissory note for $50,000 and a deed of trust, hereafter called the mortgage, securing the note made on August 1, 1923, which were the property of the Interstate Casualty Company, held by Revelle as its receiver subject to a pledge to secure certain liabilities of the American General Indemnity Corporation, the payee in the note and mortgage.

The mortgaged property securing the payment of the note was eight acres of land in the city of Chillicothe, Mo., and the Chillicothe Furniture Factory building, equipment, yards, and trackage on the Wabash Railway. The mortgage was filed for record on November 17, 1923, and duly recorded.

The question in this case is, whether the United States District Judge below violated any established principle or rule of equity or committed an abuse of his discretion in enjoining temporarily until the further order of his court the Furniture Company from proceeding with the prosecution of its suit in the state court to avoid and annul its $50,000 note and mortgage, for the principles, rules, and practice in equity imposed the duty upon the district judge and intrusted to his sound judicial discretion, and not to the discretion of this court or any of its members, the duty to decide whether or not the Furniture Company ought to be temporarily delayed in prosecuting in the state court its suit to destroy its note and mortgage.

The payee in the note and mortgage, the Indemnity Corporation, was required by the statutes of Missouri as a condition of continuing its business in that state to deposit in cash or securities $200,000 as security for the payment of certain of its liabilities, and to keep them on deposit "in a strong iron box, which shall require two distinct and different keys to unlock the same, one key to be kept by the superintendent (the state superintendent of insurance) and the other by the company; and the box shall not be opened except in the presence of the superintendent or deputy, and said president, vice president, or authorized agent of the company." The statutes also provided that so long as the company so depositing should continue solvent the superintendent should "permit such company to collect and receive the interest or dividends on its securities so deposited and transferred, and from time to time to withdraw any such securities on depositing other securities in the stead of those to be withdrawn, such new securities to be of the same value and of the kinds required by law in the first instance." Revised Statutes of Missouri 1919, § 6341.

At some time prior to January, 1924, the Indemnity Corporation and the superintendent of insurance had deposited in a box in the Telegraphers' National Bank securities of that corporation of the value of $208,000, one of which was this note and mortgage made by the Furniture Company. To that box the superintendent took and held one key and the Indemnity Corporation took and held the other key. Neither key would open the box without the use of the other, and the note and mortgage are still in that box.

In January, 1924, the Indemnity Corporation sold and assigned the $50,000 note and mortgage, subject to the pledge to secure certain of its liabilities evidenced by the keys and the box and its contents, to the Interstate Casualty Company, a corporation, and transferred all its rights and interest therein and delivered the key to the box to that company.

On August 14, 1924, in a suit in equity in the court below by a stockholder of the Casualty Company against the Casualty Company to collect, take, sell, and apply the proceeds of all its property to the payment of its creditors and stockholders, the court below appointed the plaintiff in this suit receiver of all the property of the Casualty Company of every nature and of all its rights and interests, and directed this receiver to proceed to collect, convert into money, and to distribute the proceeds thereof to the creditors and stockholders of the Casualty Company. The plaintiff immediately qualified as receiver, the Casualty Company delivered to him all its property, including its key to the deposit box in which the Furniture Company note and mortgage were deposited, and he has been since August 14, 1924, and is proceeding in the discharge of his duties as such receiver. On October 2, 1924, about 40 days after this suit was brought and the receiver was appointed, the Furniture Company brought a suit in the state circuit court against the Indemnity Corporation, the Casualty Company, the state superintendent of insurance, and others to set aside and annul its $50,000 note and mortgage on the ground that its president and secretary who signed the same were never authorized by its directors or stockholders to make this note and mortgage. On October 30, 1924, the state court temporarily enjoined the defendants, of which the receiver of the Casualty Company was not one, in that suit

from selling, disposing of, or using the $50,-000 note and mortgage. Subsequently Revelle, the receiver of the Casualty Company, was made a defendant in that suit, and so far as the record in the case in hand shows that suit still stands in that condition.

In this state of the proceedings in the suit in which Revelle was made receiver of all the property of the Casualty Company on August 14, 1924, including all the Casualty Company's title and interest in the $50,000 note and mortgage made by the Furniture Company, and in this state of the proceedings commenced October 2, 1924, in the state court in the suit of the Furniture Company to annul this note and mortgage, the receiver, Revelle, filed his original bill in equity in this suit and therein alleged that the federal court by the commencement of the suit for and the appointment of the receiver of the property of the Casualty Company for general liquidation purposes acquired exclusive jurisdiction of the Casualty Company's right to and interest in the $50,000 note and mortgage, and, of the question of its validity as against the Furniture Company, that the subsequent suit in October, 1924, by the Furniture Company in the state court and the proceedings therein constituted an unlawful and vexatious interference with the receiver's administration of the property of the Casualty Company, his liquidation of its obligations, and his discharge of his duties as receiver, and he prayed for an injunction against further proceedings, which, after the receipt of a great deal of evidence and a full and patient hearing, the court below granted.

[1] Counsel for the appellant contend that the grant of this temporary injunction was error, because the federal court below never acquired jurisdiction of the property, right, or interest of the Casualty Company in this note and mortgage in the receivership suit in that court because its receiver never reduced the note and mortgage to his actual possession. There are two answers to this position. The first is that the actual possession of the note and mortgage was in the Casualty Company and the superintendent of insurance jointly when Revelle was appointed receiver, and the title to them was in the Casualty Company. That company held the title to them subject to the pledge of them to secure certain liabilities of the Indemnity Corporation. There was testimony at the hearing indicating that the value of the securities so pledged, of which this note and mortgage were a part, was about $208,000, and that the amount of the liabilities of the Indemnity Corporation, for which they remained pledged, was about $33,000, or about one-sixth of the value of the securities. This title of the Casualty Company to the note and mortgage, subject to the pledge, its joint possession of them with the superintendent of insurance and the Casualty Company's key to the box which held them, the token and representative of its possession, all passed to and vested in the federal court and in its receiver when that court appointed him, and these constituted sufficient possession of the note and mortgage to vest in the federal court exclusive jurisdiction thereof if possession thereof had been necessary for that purpose. That court and its receiver had a joint possession of the note and mortgage, coupled with a title to them subject to a lien that was not likely to exhaust more than a third of their value, from the time of the appointment of the receiver to the present day.

[2] The second answer to the contention of counsel is that the possession of the note and mortgage was not indispensable to the exclusive jurisdiction of the federal court over the $50,000 note and mortgage and the title thereto and possession thereof as against the state court and its jurisdiction to avoid and annul them in the suit commenced in that court by the Furniture Company more than a month after the suit in the federal court was commenced and its receiver was appointed and qualified. The order of the federal court appointing Mr. Revelle receiver is not found in the record in this case, but it probably contained the usual injunction included in such orders against the interference by any and all persons and parties with the property, rights, title, and interests of the Casualty Company, which it was the object of the suit to administer and apply to the payment of its liabilities.

In Farmers' Loan & Trust Co. v. Lake Street Elevated R. Co., 177 U. S. 51, 61, 20 S. Ct. 564, 44 L. Ed. 667, a bill of foreclosure of a mortgage upon nearly all the personal and real property of the railroad company was filed by the trust company in the federal court. Shortly after that bill was filed and on the same day the railroad company filed in the state court of Cook county, Ill., a bill against the Farmers' Loan & Trust Company, the American Trust & Savings Bank, and the Northern Trust Company to administer and distribute the same property, and contended that the federal court had no exclusive jurisdiction of the property because it had not taken possession thereof before the suit in the state court was commenced. The Supreme Court sustained the exclusive jurisdiction of the federal court over all the property of the

railroad company covered by the mortgage of the Farmers' Loan & Trust Company and said, page 61 (20 S. Ct. 568): "The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons."

A few moments' thoughtful consideration leaves no doubt of the indispensability of this rule. If any or every claimant of the invalidity of or of an adverse title to or interest in any note, mortgage, real estate, or other property of a defendant corporation in a suit brought to administer and distribute the proceeds of that property to its creditors could successfully invoke and use the jurisdiction of some other court than that in which the suit for administration and distribution was first brought, the result would be delay, confusion, and, ultimately, the necessary abandonment of such suits for the administration and distribution of the property of insolvent debtors. The Supreme Court further said in the Farmers' Loan & Trust Co. v. Lake Street Elevated R. Co. Case: "Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts or liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected. The rule has been declared to be of especial importance in its application to federal and state courts. Peck v. Jenness, 7 How. 612 [12 L. Ed. 841]; Freeman v. Howe, 24 How. 450 [16 L. Ed. 749]; Moran v. Sturges, 154 U. S. 256 [14 S. Ct. 1019, 38 L. Ed. 981]; Central Bank v. Stevens, 169 U. S. 432 [18 S. Ct. 403, 42 L. Ed. 807]; Harkrader v. Wadley, 172 U. S. 148 [19 S. Ct. 119, 43 L. Ed. 399]."

In Mound City Co. v. Castleman, 187 F. 921, 924, 925, 110 C. C. A. 55, the suit in the state court was commenced by the filing of the complaint on March 20, 1907, but the summons was not issued until March 25, 1907, and it was not served until May 13, 1907, while the conflicting suit in the federal court was commenced on May 2, 1907. But this court held that the state court had acquired exclusive jurisdiction of the property and that the subsequent attempt of the federal court to acquire such jurisdiction was futile.

In McKinney v. Landon, 209 F. 300, 306, 126 C. C. A. 226, 232, speaking of the acquisition of jurisdiction, this court said: "The most difficulty arises in determining when possession of property has been taken, when jurisdiction has attached to the exclusion or postponement of that of other courts. It is settled, however, that actual seizure or possession is not essential, but that jurisdiction may be acquired by acts which, according to established procedure, stand for dominion and in effect subject the property to judicial control. It may be by the mere commencement of an action the object, or one of the objects, of which is to control, affect, or direct its disposition. See Mound City Co. v. Castleman, 110 C. C. A. 55, 187 F. 921, and the cases cited. The principle often applies 'where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected.' "

The suit in which the federal court made Revelle the receiver of the property of the Casualty Company, including its title and the joint possession of the $50,000 note and mortgage made by the Furniture Company, was and is a suit to marshal assets, to administer a trust, and to liquidate an insolvent estate in which the court below in the discharge of its judicial duties may be compelled in order to protect the rights and interests of the creditors and stockholders of the Casualty Company to assume the control and possession of the $50,000 note and mortgage and to sell or otherwise dispose of them and apply their proceeds according to the rules of law and equity in such cases, and this case falls directly under and is governed by the rules and authorities to which attention has now been called. This case falls under the established rule of law that: "The court which first acquires the lawful jurisdiction of specific property by the seizure thereof, or by the due commencement of a suit from which it appears that it is or will become necessary to a determination of the controversy involved, or to the enforcement of its judgment or decree therein, for that court to seize, to charge with a lien or trust, to sell or exercise like dominion over it, thereby withdraws that property from the jurisdiction of every other court, so far as necessary to accomplish the purpose of the suit, and entitles that court to retain the con-

trol of it requisite to effectuate its final judgment or decree therein, free from the interference of every other tribunal." Berg et al. v. Fidelity & Casualty Co. (C. C. A.) 274 F. 311, 312, and cases cited.

Another claim of counsel for the Furniture Company is, that there is no conflict or probable conflict between the federal and the state court or their jurisdictions in this case. This claim, however, is not persuasive to our minds. One of these courts, if it proceeded to decree, might hold the note and mortgage valid and in favor of the Casualty Company and its receiver on evidence presented to that court, and the other, under evidence presented to it, might hold them void. That, however, is not the question in the case now in hand.

That question is, Did the federal court by the suit in it for the administration and distribution of the assets of the Casualty Company to its creditors and stockholders of all its property, including its title and joint possession of the $50,000 note and mortgage, acquire exclusive jurisdiction of that note and mortgage and thereby withdraw them and every question relative to their validity, material or pertinent to the accomplishment of the purpose and object of that suit, from the jurisdiction of every other tribunal until that purpose and object had been accomplished or that court had relinquished its jurisdiction of the note and mortgage to that end? That question on the record in this case must be and it is answered in the affirmative in accordance with the rule and practice we have cited, and that answer accomplishes the purpose of, gives effect to the rule, and prevents, renders impossible, a conflict of jurisdiction between the federal and the state court relative to this note and mortgage.

There was no error or abuse of discretion in the order or decree for the temporary injunction in this case, and it is affirmed.